## DANIELS v. LOUISIANA POWER & LIGHT CO. et al.

### No. 5337.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

J. Norman Coon, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, Shotwell & Brown, and Robert H. Hope, all of Monroe, for appellees.

DREW, Judge.

This is a suit by Leon Daniels for damages for personal injuries alleged to have been sustained in and growing out of an accident which took place on the Dixie-Overland Highway, some 3 miles west of West Monroe, on January 10, 1935. The accident in question involved a truck owned by the Monroe Grocer Company and operated by plaintiff, and a trailer which was fastened to a truck owned by defendant Louisiana Power & Light Company and being driven by defendant A. F. Vancil. The suit is brought by Leon Daniels, the driver of one truck, against Louisiana Power & Light Company, its employee, A. F. Vancil, and its insurer, Hartford Accident & Indemnity Company.

In his petition plaintiff alleged that on the day in question, January 10, 1935, about 7 o'clock in the morning, he was proceeding in the Monroe Grocer Company's truck and in the course of his employment in a westerly direction on the West Monroe-Ruston highway; that when he had reached a point about 3 miles from West Monroe, he was passed by the Louisiana Power & Light Company's truck then being driven by A. F. Vancil, who, he alleges, was acting at the time in the course and within the scope of his employment; that fastened to the rear end of the Power Company's truck there was a trailer which was being towed and pulled by the truck; and that, after his own truck had safely negotiated a passing of the Power Company's truck and as it reached a point about opposite the trailer, the trailer came unfastened from the truck and swung across the road, striking plaintiff's truck.

Plaintiff's version of the accident and his sole charges of negligence are contained in articles 3 and 4 of his petition, which we quote:

"3. That about the time the Louisiana Power & Light Company's truck reaches a point opposite the truck which your petitioner was driving, a trailer which was being towed and pulled by the said Louisiana Power & Light Company's truck came unfastened or uncoupled from said truck and the said trailer ran and came across the road and ran into the truck which your petitioner was driving. That the tongue of said trailer jammed into and came through the door of the truck which your petitioner was driving, striking and hitting him on the thigh of the left leg, throwing and forcing him away from the steering wheel of his truck causing him to lose control of his truck, which said truck ran across the road out of ˙control and turned over, injuring and damaging your petitioner as hereinafter set forth.

"4. That at the time of said accident your petitioner was operating his said truck well on his right side of the road and at a speed not exceeding 20 miles per hour; and that the accident was due solely to the carelessness and negligence of A. F. Vancil; that the Louisiana Power & Light Company's truck was not properly nor securely fastened to said truck, but was only loosely tied to said truck by a piece of wire, which said fact was known or should have been known by the said A. F. Vancil; that said trailer was so loosely fastened to said truck, that said trailer was bouncing over on the left side of the road of the truck driven by A. F. Vancil, which fact was known or should have been known by said A. F. Vancil, who was driving said truck at a reckless and unsafe rate of speed in excess of 45 miles per hour; and that in so operating said truck the said A. F. Vancil was guilty of reckless driving in violation of Act ˙21 of the Legislature of Louisiana for 1932, and acts amendatory thereto."

Plaintiff itemizes his damages to a total of $5,000 and made the Hartford Accident & Indemnity Company a party defendant in solido with Vancil and the Power Company as their public liability and property damage insurer, as permitted by Act No. 55 of 1930. The prayer is for solidary judgment against all three defendants.

Hartford Accident & Indemnity Company and Louisiana Power & Light Company each filed exceptions of no cause or right of action, which were overruled, and answers were filed by all three defendants specially denying the acts of negligence, charged against Vancil and averring, on the

contrary, that the trailer in question was securely fastened to the Power Company's truck and at the time of the accident both the truck and trailer were wholly on their own right-hand side of the highway; that at the time of the accident plaintiff was driving his truck at a fast and reckless speed, encroaching upon the left or south side of the highway; that plaintiff ran his truck into and struck the trailer attached to the Power Company's truck, knocking it loose from its mooring to the truck and swinging it around in such a way that the tongue of the trailer was thrust into the cab of plaintiff's truck; that the accident was due wholly to the negligence and carelessness of the plaintiff, who at the time was not keeping a proper lookout, and that by his negligence he is barred from recovery herein.

All defendants set up an alternative plea of contributory negligence on plaintiff's part.

In addition to the defense on the merits, the Louisiana Power & Light Company set up the defense that, at the time of the accident complained of, Vancil had not entered upon his duties for it, had not reported to work, and at the time of the accident had not been required to report for work, and that at the time of the accident he was not engaged upon any mission for it or in its behalf, but, on the contrary, was engaged on a mission wholly his own and wholly for his own convenience and benefit and was therefore not acting within the course and scope of his employment and, as a consequence, regardless of any negligence on his part, the Power Company could not be held responsible in this suit for his actions. This is the first defense urged by the Power Company, and the defense on the merits is urged in the alternative to this defense.

The Hartford Accident & Indemnity Company, appearing through its own counsel, made substantially the same defense on the merits as the Louisiana Power & Light Company, but likewise pleaded a lack of coverage under its policy, averring in this connection " * * * that it carried no insurance of any nature or kind whatsoever in favor of Louisiana Power & Light Company, which in any sense covers any loss or damage as alleged by petition herein or which renders respondent liable to petitioner herein for any of the reasons set out in his petition."

We might state at this point that plaintiff omitted to introduce or offer in evidence the policy of insurance upon which he was seeking to hold the Hartford liable as insurer.

On these issues the case went to trial, resulting in a judgment in favor of all defendants and rejecting plaintiff's demands at his costs. From this judgment plaintiff has perfected an appeal to this court.

■ Plaintiff made the Hartford Accident & Indemnity Company a party defendant and alleged it was the insurer of defendant Light & Power Company. The Insurance Company denied this allegation, and on trial of the case the policy of insurance was not offered in evidence, and there is no other evidence to connect the Insurance Company in any way with the other defendants. It necessarily follows the judgment of the lower court rejecting plaintiff's demands against the Insurance Company is correct, and it will be eliminated from further discussion in this case.

The only charge of negligence made by plaintiff against the defendants is that the defendant Power & Light Company's truck was being driven at a fast and reckless speed, with a trailer attached thereto which was insecurely fastened to the truck; that the trailer broke loose from the truck and traveled diagonally across the road, ramming the truck driven by plaintiff. Plaintiff failed utterly to prove the first charge of negligence. The evidence is convincing that defendant's truck was not exceeding a speed of 20 miles per hour, and possibly not more than 15 miles; and that the truck driven by plaintiff was traveling about twice as fast; therefore, the only question to determine is his last charge of negligence, which is purely a question of fact and which was decided by the lower court in favor of defendant.

■ If the judgment of the lower court had not been based upon this finding of facts in favor of the defendants, the driver of the defendant's truck would necessarily have been held liable whether the Power & Light Company was or not. We are reluctant to disturb the finding of facts by the lower court unless such finding is clearly erroneous, and, whenever the testimony is so greatly in conflict, as in this case, we are even more reluctant.

■ Defendant's truck driver lived 5 or 6 miles east of Monroe, La., and about one mile off the Dixie-Overland Highway. On the afternoon before the accident the next morning, the truck driver had borrowed from a friend in West Monroe a

trailer which was customarily used to transport mules, cows, etc. He attached the trailer to his personal car and carried a cow to his home. He was in the employ of the defendant Power & Light Company in the capacity of foreman of a crew whose duties were to answer any trouble calls and to repair the trouble. In order that he might have transportation for himself, his crew, and the materials necessary, he was allowed to keep at his home one of the company's trucks which he not only used for the purposes enumerated but also to go to and from work. On the morning of the accident, he left home earlier than usual and, before leaving, attached the trailer to the truck to return said trailer to the friend from whom he had borrowed it. The truck was not equipped with connections to attach a trailer, but, where the uprights on the body of the truck were usually placed on the back end, there were square holes through the bottom of the bed of the truck. The trailer was attached by running three strands of No. 8 wire through one of these holes and looping it through a clevis on the end of the tongue of the trailer. The connection thus made was not more than three inches in length. When the driver left home with the truck, his brother and a friend were riding on the seat with him. In traveling over the dirt road before reaching the pavement, it was noticeable to the occupants of the truck that the trailer was not pulling true, but more or less from one side to the other. When they arrived at the intersection with the paved Dixie-Overland Highway, the truck was stopped, they got out, and closely examined the wire connecting the trailer with the truck and found the wire was not worn and the connection good. They proceeded east on said highway in the direction of West Monroe. The driver's destination at that time was first to the home of his friend to return the trailer, and to continue from there to the foot of the traffic bridge connecting Monroe and West Monroe. It was not out of his way to go by his friend's house and was the usual route he traveled in going from his home to his work. After traveling east on said highway for two or three miles, the accident which is the subject of this suit occurred.

As before stated, plaintiff contends that as his truck, traveling west, was in the act of passing defendant's truck and was even with it, the trailer suddenly broke loose from the truck and turned directly across the road, the tongue of the trailer protruding through the door of plaintiff's truck and injuring him. Defendants contend that plaintiff's truck was on its left side of the road and ran into the trailer, breaking it loose from defendant's truck. Plaintiff is corroborated by the other occupant of his truck and two other witnesses who claim to have seen the accident. Defendant is corroborated by the occupants of his truck, two or three other witnesses who examined the tracks soon after the accident, and by the owner of the trailer as to the course it would pursue had it become disconnected from the truck of its own accord. The occupants of defendant's truck testified that when they first saw plaintiff's truck it was several hundred yards away, had just rounded a small curve in the road, and was entirely on its left side of the road; that defendant's truck driver slowed down and pulled as far to his right as possible. They were of the opinion, from his actions, that plaintiff was not paying attention to how he was traveling and was not looking ahead. This opinion is borne out by plaintiff's testimony and that of his helper.

Plaintiff testified he first saw defendant's truck when it was about as far from him as the wall of the courtroom in which he was testifying. He further testified that when he first saw the truck he noticed the trailer bouncing to and fro across the road about the distance of a foot, and he immediately remarked, "Gee! Look at that trailer. * * * When I spoke to him (meaning as he made that remark) that's when the tongue of the trailer came through the truck where I was sitting." His helper testified that he did not notice the truck until plaintiff made the remark above quoted and they were then close together. Every other witness for both plaintiff and defendants testified that they saw the two trucks when from 300 to 600 yards apart. There was no reason why plaintiff did not see, other than he was not looking. It is admitted by all witnesses that defendant's truck was on its right side of the road at all times. The evidence as to whether plaintiff's truck was traveling to its left of the medial line of the pavement is most conflicting. The lower court undoubtedly found that it was to its left. It is reasonably improbable that the trailer, if it had become disconnected without the aid of outside force, would have performed the antics claimed by plaintiff. It is not impossible, but certainly improbable. It is not shown there was anything to have caused it immediately upon becoming dis-

connected to make the complete left angle and jam directly into the side of plaintiff's truck. While, on the other hand, if the back end of said trailer, which was 6 feet long, had been struck by plaintiff's truck, the most probable thing which would have happened would have been to throw the front around in the direction of plaintiff's truck. If the trailer had broken loose some distance from plaintiff's truck, it is almost certain that its tongue would have dropped to the pavement before it had traveled many feet, due to the way the trailer was constructed. It weighed 600 pounds, had only two wheels, one on each side. These wheels were 2 feet back of the center of said trailer, necessarily causing the front end to be the heavier and drop to the ground when disconnected from the truck.

The testimony discloses that the wire connecting the trailer to the truck did not break where it was looped through the bed of the truck or where it was looped through the clevis on the tongue of the trailer, but was actually pulled in two between the two points. It is also shown without contradiction that it would require a force of 6,000 pounds to pull these strands of wire in two. These facts weigh strongly in favor of defendant's contention.

Without further discussion of the conflicting testimony, which would be without avail to any one, we leave the case where we found it, for the reason that only facts are involved, and we are not convinced the judgment of the lower court is manifestly erroneous.

The judgment is affirmed, with costs.